THE TERRITORY OF NEW MEXICO, Appellee, v. THE PERSONS, REAL ESTATE and Property described in the Delinquent Tax List of the County of Bernalillo, for the year 1900, Appellants.

[No. 998.   March 3, 1904.]

### SYLLABUS.

1. The title to an imperfect Spanish or Mexican grant was at the date of the treaty with Mexico vested in the United States.

2. The land court act (Act Cong. March 3, 1891, c. 539, section 10, 26 Stat. 858, [U. S. Comp. St. 1901, p. 770]) provides that the decrees of the court of private land claims are to be defined by survey made under the direction of the Land Department, and prescribes the proceedings for advertisement, objections, etc., and provides for the approval of the survey by the court if it is in substantial accordance with the decree of confirmation. A further provision limits the confirmation of imperfect grants to 11 square leagues. *Held*, that title to an imperfect grant does not pass out of the United States on the decree of the court of private land claims but only on the confirmation by that court of the survey.

3. Until that time the land subject to such a grant cannot be assessed for territorial taxation.

Appeal from the district court of Bernalillo county, before J. W. CRUMPACKER, Associate Judge. Reversed.

E. W. DOBSON for appellants.

The plaintiff by demurring to defendants answer, admitted the truth of the allegations and matters properly pleaded by defendants, and consequently there is only one issue, and that is whether or not an imperfect grant confirmed by the court of Private Land Claims, which at the time of the assessment for purposes of taxation, had been surveyed, but the survey thereof had not been approved by the said land Court is subject to taxtion.

Sec. 10 of the Act of Congress of March 3, 1891; Colorado Company v. Commissioners, 95 U. S. 259; Railway Company v. Prescott, 16 Wall 603; Railway Company v.McShane et al., 22 Wall. 444; Northern Pacific Railway Company v. Meyers, 172 U. S. 589; Central Pacific Railroad Company v. Nevada, 162 U. S. 512.

F. W. CLANCY for appellee.

The confirmation by the court of Private Land Claims, operates as a release by the United States of its title to the land confirmed.

Union Pacific R. R. Co. v. McShane, 22 Wall. 462-3; Statutes at Large, 143; Improvement Co. v. County Commissioners, 95 U. S. 265; Snyder v. Sickles, 98 U. S. 213-4.

### STATEMENT OF THE CASE.

This proceeding was begun by the filing of a suit in the court below on the twelfth day of October, A. D., 1901 to secure judgment against the Nuestra Senora de la Luz de las Lagunitas grant situated in the county of Bernalillo, for taxes levied on the property for the year 1900. On November 29, 1901, Elizabeth Longwell and others claiming to be the owners of interests in the grant answered, setting up the following facts: That the grant in question was granted to Juan Antonio Baca on July 20, 1762, by the governor and captain-general of what was then the Spanish province of New Mexico; that said grant was confirmed on February 14, 1895, by the court of Private Land Claims; that it had been surveyed but such survey had not been approved by the Court of Private Land Claims or the General Land Office; that one-half of the costs of survey required by said land court act to be paid had not been paid and that no patent had issued. The defendant further answered, that by reason

of the facts just recited, the title to the land embraced within the grant remained and still remains vested in the government of the United States, and that the assessment and all proceedings subsequent thereto, were void. The Territory demurred generally to the answer. The demurrer was sustained. Defendants elected to stand upon the answer, and thereupon the court entered judgment for the taxes assessed together with penalty and costs amounting to $541.13. The defendants brought the case to this court by appeal.

OPINION OF THE COURT.

M'cFIE, A. J.—The question arising upon this record is, whether or not a grant confirmed as imperfect by the Court of Private Land Claims can be assessed for taxation, when at the date of assessment it had been surveyed, that the survey thereof had not been approved by that Court. It is contended by the appellants that this cannot be done, while counsel for the Territory insisted that the decree of the court is a relinquishment of all right or claim by the United States, and, therefore, the land is taxable if it can be identified, as soon as the decree is entered.

In the case of the Ojo de Borrego grant, decided at the last term of this court, it was held that a grant confirmed as perfect and complete by the Court of Private Land Claims, and the survey of which has been made under the direction of and approved by that court, is subject to taxation, and this although the claiments have not paid the government their share of the costs of survey, and, although no patent has issued. The present case differs from that just mentioned in two respects: First, this is an imperfect, instead of a perfect, grant; second, the survey of the grant had in that case been approved by the Court of Private Land Claims, in this case it had not. Do these differences in the status of the grants at that date of assessment lead to any distinction in their

liability for taxation? This involves a consideration of the difference between perfect and imperfect grants. The character of the former class had been considered and discussed in the Ojo de Borrego case just mentioned, and it was there shown that a perfect grant is one where the granting power has, on the one hand, done all that the law requires to make a complete title, 'and the grantee has also done all that the law requires of him to receive and enjoy it in fee. Such a grant is intrinsically valid and is not strengthened by any legislative, or judicial sanction or confirmation. It needs none. An imperfect grant, on the other hand, is one which requires a further exercise of the granting power to pass the fee in the lands, is one "which does not convey full and absolute dominion not only as against private persons but as against the government, and, which may be affirmed or disavowed by the political or granting authority." Paschal v. Perex, 7 Texas 368.

In Menards' Heirs v. Massey, 8 Howard 293, it is said: "It was, therefore, manifest that the claims resting on the first incipient steps must depend for their sanction and completion upon the sovereign power and to this course claimant had no just cause to object; as their condition was the same under the Spanish government. No standing, therefore, in an ordinary judicial tribunal has ever been allowed to these claims until Congress has confirmed and then vested the legal title in the claimant." It is there further said: "From the first act passed in 1805 up to the present time, Congress has never allowed these claims any standing other than that of mere orders of survey, and promises to give title, and which promises address themselves to the sovereign power in its political and legislative power."

In West v. Cochran, 17 Howard 403, the court says: "It has often been held by this court that the judicial tribunals, in the ordinary administration of justice, had no jurisdiction or power to deal with these incipient

claims, either as to fixing boundaries by survey, or for any other purpose; but that claiments were compelled to rely upon Congress in which power was conferred by the constitution to dispose of, and make all needful rules and regulations respecting the territory and property of the United States.    Among these needful regulations was that of providing that these unlocated claims shall be surveyed by lawful authority; a consideration that has occupied a prominent place in the legislation of Congress from an early day."

It being established by the authorities, that the title to an imperfect Spanish or Mexican grant was, at the date of the treaty vested in the United States, at what time under the land court proceedure, did such title leave the government and become vested in the claiment before that court, for the purposes of taxation.    Was it, as contended by the Territory, upon the entry of the decree of confirmation, or was it after a survey had been made and approved by the court?    It should be remembered, at the outset, that decrees of the Court of Private Land Claims are not self executing. Such decrees, it is provided by the land court act, are to be defined by a survey made under the direction of the Land Department.    This survey must be advertised once a week for four consecutive weeks in two newspapers, one published at the capital of the Territory; the survey is then held for public inspection for ninety days.    If no objections are filed, it is approved by the surveyor-general and by him forwarded to the commissioner of the General Land Office.    If there are objections filed, the surveyor-general must forward such survey, with the objections, to the commissioner: and, whether there be objections or not, the commissioner must thereupon, return the survey for its determination, "if the survey is in substantial accordance with the decree of confirmation."    Section 10 of Act of Congress, March 3, 1891. If the survey is in substantial accordance with the de-

cree of confirmation, the court orders the survey approved; if incorrect, it is returned for "correction in such particulars as it may direct."

It is evident, this elaborate procedure is for the purpose of securing from the same tribunal which declared the validity of the claim, a decision as to its extent, so far as an imperfect grant, at least, is concerned. The two acts, the decree fixing the validity of the grant and the approval of the survey fixing its extent, constitute the confirmation; and it is no more within the power of a court, other than the Court of Private Land Claims, to fix or determine the extent of an imperfect grant, than it would be within the power of such other court to determine, in the first instance, its validity. These two functions are vested exclusively in the land court and until it performs them, the title to an imperfect grant remains vested in the United States. This is especially emphasized in the case of imperfect grants, by the fact that the land court act, in subsection 7 of section 13, limits the confirmation in that class of grants to eleven (11) square leagues. All imperfect grants are confirmed with the statutory limitations imposed upon them, a limitation which it is assumed was carried into the decree of this case. It is, therefore, a matter of determination on survey as to whether the imperfect grant as confirmed, contains more than eleven (11) leagues. If it does, the quantity must be located within the exterior boundaries, and this survey and act of segregation are each to be submitted to the court for its approval. Until that approval is given, the confirmation is unattached and is ineffectual to pass the title to any definite tract of land. When that segregation and survey is made and that approval obtained, a confirmation will then "immediately attach the title to the lands segregated." Langden v. Hanes, 21 Wall. 521, 531. That the views herein expressed are sound, the following au-

thorities will, in our opinion, fully demonstrate.   In Mc-
guire v. Tyler, 8 Wall. 650, speaking of an imperfect
claim, the court said:   "Having never been surveyed at
the request of the confirmee not by order of the land of-
fice and never patented to the claimant, it remained as
it had been throughout, an incomplete title attached to
no land and it could not be convered into a complete
title, except by legal survey and a patent executed in due
form as required by law."

In Ledoux v. Black, 18 Howard 473:   "Nor did the
mere act of confirmation tend to locate the claim, and
sever the land from the public domain; this could only
be done by a public survey, and which was not done un-
til 1844.   Up to that date, the government could sell and
convey a legal title to Gen. Lafayette, regardless of the
fact that Bouligny's concession existed, and might be
surveyed on the land primarily granted.   This question
was settled by the decision in the case of Menards' Heirs
v. Massey, 8 Howard 301, and is not open to contro-
versy."

In West v. Cochran, 17 Howard 415, this subject
was also considered in the following language:   "But
Congress having said, by the act of 1807, that he shall
be confirmed in what shall be designated by a survey
made under the authority of the United States, accord-
ing to the direction of the board of commissioners and
such direction to survey being a condition which the
judgment of confirmation carried along with it, until
the survey was made, the plaintiff's title attached to no
land, nor could a court of justice ascertain its bounda-
ries as this power is reserved to the executive depart-
ment of the Federal government; it follows that the le-
gal representative of Brazean, who brings suit, had no
title at the time it was brought that would support an
action of ejectment."

The case above cited and many others to which ref-
erence might be made, conclusively shows that without

a duly approved survey, the decree of the Court of Private Land Claims, declaring the validity of the grant in controversy, did not become legally effective to pass the title to the land out of the United States.

The want of an approved survey is all the more important when it is remembered that the land is being considered from the standpoint of taxation. To constitute a proper subject for taxation, the property must be definite and clearly defined. There must be boundaries from which it is possible to accurately ascertain the premises and the purchaser's right should a sale for taxes become necessary.

In the case of this grant, there can be nothing of this kind in advance of an approved survey. It is true, that the complaint speaks of 42,891 acres, more or less, and refers, for a more complete description of the tract to "the description and boundaries thereof on file in the office of the surveyor-general of New Mexico." But that description and those boundaries were at the date of assessment, purely tentative; the survey which embodied them not having been approved, *non constat,* but that survey, when subsequently presented to the land court, was rejected; and that the location of the boundaries and quantity upon which a tax levy is now predicted, was declared erroneous. The survey just referred to, was not final and it must be admitted that it was within the power of the land court to reject it. If so, an affirmance of this judgment and a sale of the property for taxes according to the "description and boundaries" in the office of the surveyor-general at the date of the assessment, would attempt to convey property that the court subsequently held to belong, not to the claimant, but to be a part of public domain.

In sustaining the validity of a tax levied upon and assessed against an imperfect grant in advance of the approval of the survey thereof, in accordance with the decree of confirmation, the court below erred, and the

cause must be reversed. It is so ordered.

Mills, C. J., and Parker, A. J., concur.

BAKER, A. J.—I am of the opinion that this decision announces the law.